NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianllp.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianllp.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianllp.com
**SALISIAN LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:    (800) 622-9145

MICHELLE M. CHIONGSON, SBN 221740
michelle.chiongson@amerisbank.com
**AMERIS BANK**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>SOSUMI HOLDINGS, INC., a Florida corporation, doing business as INTECH PRINTING & DIRECT MAIL; and RODNEY HELD, an individual,<br><br>Defendants. | Case No. 8:25-cv-02276-DFM<br><br>[Assigned to the Hon. Douglas F. McCormick]<br><br>**PLAINTIFF BALBOA CAPITAL CORPORATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br>Complaint Filed:   October 9, 2025<br>Trial Date:          None |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 17, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6B of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth Street, Santa Ana, CA, 92701-4516, the Honorable Douglas F. McCormick presiding, plaintiff Ameris Bank, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendants Sosumi Holdings, Inc. d/b/a Intech Printing & Direct Mail ("Sosumi"), and Rodney Held ("Held") (collectively with Sosumi, "Defendants") for a judgment amount of **$135,404.24**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of $135,404.12, as Balboa has established (a) a sum certain due and owing by Defendants to Balboa pursuant to Equipment Financing Agreement and Guaranty entered into by Defendants and Balboa; (b) that Defendants are not in military service and are neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//
//

2

1    PLEASE TAKE FURTHER NOTICE that this motion is based on this

2  Notice of Motion, the supporting Memorandum of Points and Authorities, the

3  supporting declarations of Patty W. Chen and Don Ngo, and the exhibits attached

4  thereto, the pleadings and papers filed in this action, and upon such further briefing,

5  authorities, and argument submitted to the Court prior to, or during, the hearing on

6  this matter.

7

8  DATED: February 12, 2026                    SALISIAN | LEE LLP

9

10                                              By: _____

11                                                  Neal S. Salisian
                                                    Jared T. Densen
12                                                  Patty W. Chen

13

14                                              Attorneys for Plaintiff
                                                AMERIS BANK d/b/a BALBOA CAPITAL
15                                              CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR DEFAULT JUDGMENT
CASE NO.: 8:25−cv−02276-DFM

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND RELEVANT FACTS ........................................ 1

    a.    The Equipment Financing Agreement. .................................... 1

    b.    Attorneys' Fees and Costs ........................................................ 2

    c.    Default Judgment Motion ......................................................... 3

II.    LEGAL ARGUMENT ......................................................................... 4

    A.    Plaintiff Will Be Highly Prejudiced If Its Default
          Judgment Motion Is Denied. ..................................................... 5

    B.    Plaintiff Has A High Likelihood Of Success On The
          Merits Of Its Substantive Claims And Its Complaint Is
          Sufficiently Pled. ...................................................................... 6

    C.    The Sum Of Money At Stake Favors An Entry Of A
          Default Judgment Against Defendants. ..................................... 8

    D.    There Are No Material Facts That Are Reasonably In Dispute. ......... 10

    E.    Defendants' Defaults Are Not The Result Of Excusable Neglect ....... 11

    F.    Policy Concerns Favor Default Judgment In This Matter. ................. 13

    G.    Plaintiff Has Proven Its Damages. ....................................... 14

III.    CONCLUSION ........................................................................... 15

1

1

# <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

4
*Acoustics, Inc. v. Trepte Constr. Co.*,
    14 Cal. App. 3d 887, 916 (1971)........................................................................7

5

6
*Draper v. Coombs*,
    792 F.2d 915, 924 (9th Cir. 1986)....................................................................11

7

8
*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
    710 F.2d 170, 176 (4th Cir. 1983)....................................................................12

9

10
*Eitel v. McCool*,
    782 F.2d 1470, 1471-72 (9th Cir. 1986). ....................... 4, 5, 7, 8, 9, 11

11

12
*Geddes v. United Fin. Group*,
    559 F.2d 557, 560 (9th Cir. 1977)..................................................................6, 10

13
*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
    725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) ..................................................10

14

15
*McKnight v. Webster*,
    499 F. Supp.  420, 424 (E.D. PA 1980) ...........................................................12

16

17
*NewGen, LLC v. Safe Cig, LLC*,
    804 F.3d 606, 616 (9th Cir. 2016)................................................................11, 13

18

19
*O'Connor v. State of Nevada*,
    27 F.3d 357, 364 (9th Cir. 1994)....................................................................11

20

21
*Pena v. Seguros La Comercia, S.A.*,
    770 F.2d 811, 814 (9th Cir. 1985)....................................................................13

22

23
*Penpower Tech, Ltd. v. S.P.C. Tech.*,
    627 F. Supp. 2d 1083 (N.D. Cal. 2008) ...........................................................9, 13

24
*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ...........................................5, 6, 7

25

26
*Reichert v. Gen. Ins. Co.*,
    68 Cal.2d 822, 830 (1968)..................................................................................7

27

28
*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
    194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ...................................................12

2

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ........... 8

**STATUTES**

Code of Civil Procedure § 1620 .................................................................... 7

Code of Civil Procedure § 3300 .................................................................... 7

Fed. R. Civ. P. 55 ......................................................................................... 4

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2) ........................................................ 7

MOTION FOR DEFAULT JUDGMENT
CASE NO.: 8:25-cv-02276-DFM

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION AND RELEVANT FACTS

3       Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing

4   business as Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant

5   Motion for Default Judgment against defendants Sosumi Holdings Inc. d/b/a Intech

6   Printing & Direct Mail ("Sosumi"), and Rodney Held ("Held") (collectively with

7   Sosumi, "Defendants").

8           **a.    The Equipment Financing Agreement.**

9       This action involves a claim for damages by Balboa against Defendants for

10   breach of the written Equipment Financing Agreement No. 405449-0000 (the

11   "EFA"), and breach of the corresponding personal guaranty of that agreement. [*See*

12   Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

13       Specifically, Balboa, on the one hand, and Sosumi, on the other, entered into

14   the EFA on or about June 16, 2022. [*See id*.] Under the terms of the EFA, Balboa

15   loaned to Sosumi the sum of $236,704.27, to finance equipment for its business (the

16   "Collateral"). [*See id*.]

17       Concurrently with the execution of the EFA, and in order to induce Balboa to

18   enter into the EFA with Sosumi, Held guaranteed, in writing, the payment of the

19   then-existing and future indebtedness due and owing to Balboa under the terms of

20   the EFA (the "Guaranty"). [*See id*., ¶4, Exh. A (Page 1).] Balboa relied on the

21   Guaranty to finance the Collateral for Sosumi's business. [*See id*.]

22       Under the EFA, Sosumi was required to make fifty-nine (59) monthly

23   payments of $5,165.08, beginning on August 29, 2022. [*See id*., ¶5, Exh. B.] The

24   last payment received by Balboa was credited toward the payment due for June 29,

25   2025. [*See id*., Exh. B.] Therefore, on July 29, 2025, Defendants breached the

26   EFA, by failing to make the monthly payment due on that date, and thus, both have

27   remained continuously in default. [*See id*.]

28

1   At the time of Defendants' default there remained twenty-four (24) monthly

2   payments for a total of $123,961.92, due to Balboa.  [*See id.*, ¶6, <u>Exh. B</u>.]

3   Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the

4   event of a default, Balboa may "…(c) accelerate and declare all sums due and to

5   become due hereunder immediately due and payable, all future payments

6   discounted at 3% as calculated by us…" Balboa's calculation of the 3% discount is

7   made pursuant to a present-value ("PV") accounting formula that is calculated to

8   discount each future monthly accelerated payment down to what the present value

9   would be in today's dollar figure. For example, a payment owed exactly one year

10  from today would be discounted by the full 3%, whereas earlier payments would

11  discounted by less, and further payments would be discounted by more. Based upon

12  this formula, Balboa calculated that the amount due totaled $110,705.25 ("PV'D

13  Rent"). [*See id.*, ¶7, <u>Exh. A</u>.]

14  In addition to the PV'D Rent, Defendants owed the monthly payments for

15  July 29, 2025 and August 29, 2025, in the amount of $10,330.16, which had not

16  been accelerated at the time of default as it was already due and payable.  [*See id.*

17  ¶8, <u>Exh. B</u>.]  Defendants have since failed to make further payments.  [*See id.*]

18  Thus, $121,035.41 remains owed to Balboa.  [*See id.*]

19  In addition, based on the amount due of $121,035.41, Balboa is entitled to

20  prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant

21  to Cal. Civ. Code § 3298(b), from July 29, 2025, the date of breach, to March 17,

22  2026, the date noticed for the hearing of this Motion for Default Judgment

23  ("Default Motion"), for a total interest amount of **$7,693.12**, accruing at a rate of

24  **$33.16 per day**, until the entry of judgment.  [*See id.*, ¶9; *see also* Declaration of

25  Patty W. Chen ("Chen Decl."), ¶¶5-6.]

26  **b.    Attorneys' Fees and Costs**

27  Pursuant to the "Default and Remedies" section on page 3 of the EFA,

28  Balboa is entitled to recover its attorneys' fees and costs from Defendants.  [*See*

Chen Decl., ¶7.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$6,020.71**.  [*See id*.]  Balboa has indeed incurred **$655.00**, in recoverable costs - $405.00 for filing of the Complaint, $125.00 for service upon Sosumi, and $125.00 for service upon Held.  [*See id*., Exh. D.]

### c.    Default Judgment Motion

Balboa's Default Motion satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its Complaint and case-initiating documents on October 9, 2025.  [*See* Dkts. 1-4.] Defendants were properly served on November 11, 2025, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkts. 7-8.]  On December 18, 2025, Balboa filed its Request for Clerk to Enter Default against Defendants ("Default Entry Request"), and the Clerk entered default on December 22, 2025.  [*See* Dkts. 9-10.]

Defendants are not minors, incompetent persons, or persons in military service or otherwise exempted from default judgment under the Servicemembers Civil Relief Act of 1940 (the "SCRA").  [*See* Chen Decl., ¶4, Exh. C.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000.  [*See* Dkt. 1; *see also* Chen Decl., ¶8.]  Plaintiff Balboa was and still operates as a California corporation, with its principal place of business in Orange County, California.  [*See id*.]  Balboa is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank.  [*See id*.]

Based upon my office's research, and information and belief, Held is domiciled in Naples, FL 34113.  [*See* Chen Decl., ¶9.]  Thus, Held is a citizen of the State of Florida.  [*See id*.]  Additionally, based upon research, and upon information and belief, Sosumi has its principal place of business in the County of

3

Collier, State of Florida. [*See id.*, Exh. F] Thus, Sosumi is a citizen of the State of Florida. [*See id.*] As such, there exists complete diversity amongst Plaintiff and Defendants. [*See id.*, ¶10.]

As set forth below, a default judgment should be entered against each of the Defendants since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **$135,404.24**.

## II. LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on October 9, 2025. [*See* Dkts. 1-4.] Defendants Sosumi and Held were properly served on November 11, 2025, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkts. 7-8.] On December 18, 2025, Balboa filed its Default Entry Request, and the Clerk entered default on December 22, 2025. [*See* Dkts. 9-10.]

Defendants are not minors, incompetent persons, or persons in military service or otherwise exempted from default judgment under the SCRA. [*See* Chen Decl., ¶4, Exh. C.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

4

1  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not
2  prove that all seven factors weigh in its favor, as courts *may* consider these factors
3  in their discretion on whether to enter a default judgment.  *See id*.

4      Here, the underlying facts in this action show that all seven of the *Eitel*
5  factors weigh in Balboa's favor and thus supports the entry of default judgment.

6      **A.    Plaintiff Will Be Highly Prejudiced If Its Default Judgment**
7          **Motion Is Denied.**

8      A situation in which a plaintiff will be without any other recourse or recovery
9  should its default judgment application be denied qualifies as prejudice.  *See*
10  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

11      Here, Balboa has submitted its Motion for Default Judgment as a last resort
12  due to Defendants' deliberate unwillingness to accept responsibility for its actions
13  or even acknowledge Balboa's allegations.

14      The fact remains that Balboa, pursuant to the EFA, financed the Collateral
15  for Sosumi, with Defendants agreeing to make fifty-nine (59) monthly payments of
16  $5,165.08, for which twenty-four (24) monthly payments for a total of $123,961.92.
17  [*See* Ngo Decl., ¶¶5-7, Exhs. A, B.]

18      Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the
19  event of a default, Balboa may "…(c) accelerate and declare all sums due and to
20  become due hereunder immediately due and payable, all future payments
21  discounted at 3% as calculated by us…" Balboa's calculation of the 3% discount is
22  made pursuant to a PV accounting formula that is calculated to discount each future
23  monthly accelerated payment down to what the present value would be in today's
24  dollar figure. For example, a payment owed exactly one year from today would be
25  discounted by the full 3%, whereas earlier payments would discounted by less, and
26  further payments would be discounted by more. Based upon this formula, Balboa
27  calculated that the amount due totaled $110,705.25. [*See id*., ¶7, Exh. A.]

28

5

In addition to the PV'D Rent, Defendants owed the monthly payments for July 29, 2025 and August 29, 2025, in the amount of $10,330.16, which had not been accelerated at the time of default as it was already due and payable. [*See id.* ¶8, <u>Exh. B</u>.] Defendants have since failed to make further payments. [*See id.*] Thus, **$121,035.41** remains owed to Balboa. [*See id.*]

Balboa has made demands for its monies from Defendants and under the Guaranty, all of which Defendants have failed to pay back. [*See id.*, ¶9.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendants have been unwilling to participate in, or otherwise acknowledge, the litigation. Balboa's Default Motion is its final option for an attempt at recovery, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims. *See PepsiCo*, 238 F. Supp. 2d at 1177.

Moreover, if Balboa's Default Motion is denied, it will suffer a significant loss due to no fault of its own, and Defendants will obtain a significant windfall of over $135,404.24. Not only will the deliberate nonaction by Defendants and their continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced, especially with no other available recourse, should its Default Motion be denied, and thus, further support granting the Default Motion against Defendants.

**B.**    <u>**Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**</u>

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Courts often

consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together.  *See PepsiCo*, 238 F. Supp. 2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met.  Specifically, Balboa, on the one hand, and Sosumi, on the other, entered into the EFA on or about June 16, 2022.  [*See* Ngo Decl., ¶3, <u>Exh. A</u>.]  Under the terms of the EFA, Balboa loaned to Sosumi the sum of $236,704.27, to finance the Collateral for its business.  [*See id*.]

Concurrently with the execution of the EFA, and to induce Balboa to enter into the EFA with Sosumi, Held guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA through the Guaranty.  [*See id*., ¶4, <u>Exh. A (Page 1)</u>.]  Balboa relied on the Guaranty to finance the Collateral for Sosumi's business.  [*See id*.]

Under the EFA, Sosumi was required to make fifty-nine (59) monthly payments of $5,165.08, beginning on August 29, 2022.  [*See id*., ¶5, <u>Exh. A.</u>]  The last payment received by Balboa was credited toward the payment due for June 29, 2025.  [*See id*., <u>Exh. C.</u>]  Therefore, on July 29, 2025, Defendants breached the EFA, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default there remained twenty-four (24) monthly payments for a total of $123,961.92, due to Balboa.  [*See id*., ¶6, <u>Exh. B</u>.]  Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may "…(c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as

7

calculated by us…" Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure. For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would discounted by less, and further payments would be discounted by more. Based upon this formula, Balboa calculated that the amount due totaled $110,705.25. [*See id*., ¶7, Exh. A.]

In addition to the PV'D Rent, Defendants owed the monthly payments for July 29, 2025 and August 29, 2025, in the amount of $10,330.16, which had not been accelerated at the time of default as it was already due and payable. [*See id.* ¶8, Exh. B.] Defendants have since failed to make further payments. [*See id.*] Thus, $121,035.41 remains owed to Balboa. [*See id.*]

There is no doubt, and it cannot be disputed that: (1) Balboa and Sosumi entered into the EFA; (2) Held personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA; (3) Sosumi received the loan in order to finance the Collateral for its business; (4) Defendants ceased making payments pursuant to the EFA; and (5) Balboa has suffered and continues to suffer damages due to Defendants' continued nonpayment. Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims. In fact, no known defenses exist to any of the material facts.

## C. The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment. *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts). This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct. *See Walters v. Statewide Concrete Barrier, Inc.*,

No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of **$135,404.24**; prejudgment interest from July 29, 2025, the date of breach, to March 17, 2026, the date noticed for the hearing of this Default Motion, in the amount of **$7,693.12**, plus **$33.16 per day**, until the entry of judgment. [Chen Decl., ¶¶5-6.]  Moreover, Balboa seeks statutory attorneys' fees, in the amount of **$6,020.71**; and costs in the amount of **$655.00**.  [*See id.*, ¶7, Exh. D.]

The damages sought are contractually-based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum pursuant to Cal. Civ. Code § 3298; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶¶5-7.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, and other factors, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

1

### D.    <u>There Are No Material Facts That Are Reasonably In Dispute.</u>

2  "The general rule of law is that upon default[,] the factual allegations of the

3  complaint, except those relating to the amount of damages, will be taken as true."

4  *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded

5  and the defendants make no effort to properly respond, the likelihood of disputed

6  facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d

7  916, 921 (C.D. Cal. 2010).

8  As thoroughly detailed in Section II.B., *supra*, there are no material facts that

9  are reasonably in dispute.

10  Here, Balboa, on the one hand, and Sosumi, on the other, entered into the

11  EFA on or about June 16, 2022.  [*See* Ngo Decl., ¶3, <u>Exh. A</u>.]  Under the terms of

12  the EFA, Balboa loaned to Sosumi the sum of $236,704.27, to finance the

13  Collateral for its business.  [*See id*.]

14  Concurrently with the execution of the EFA, and to induce Balboa to enter

15  into the EFA with Sosumi, Held guaranteed, in writing, the payment of the then-

16  existing and future indebtedness due and owing to Balboa under the terms of the

17  EFA through the Guaranty.  [*See id*., ¶4, <u>Exh. A (Page 1)</u>.]  Balboa relied on the

18  Guaranty to finance the Collateral for Sosumi's business.  [*See id*.]

19  Under the EFA, Sosumi was required to make fifty-nine (59) monthly

20  payments of $5,165.08, beginning on August 29, 2022.  [*See id*., ¶5, <u>Exh. A</u>.]  The

21  last payment received by Balboa was credited toward the payment due for June 29,

22  2025.  [*See id*., <u>Exh. B</u>.]  Therefore, on July 29, 2025, Defendants breached the

23  EFA, by failing to make the monthly payment due on that date, and thus, both have

24  remained continuously in default.  [*See id*.]

25  At the time of Defendants' default there remained twenty-four (24) monthly

26  payments for a total of $123,961.92, due to Balboa.  [*See id*., ¶6, <u>Exh. B</u>.]  Pursuant

27  to the "Default and Remedies" section on page 3 of the EFA, in the event of a

28  default, Balboa may "…(c) accelerate and declare all sums due and to become due

MOTION FOR DEFAULT JUDGMENT
CASE NO. : 8:25-cv-02276-DFM

hereunder immediately due and payable, all future payments discounted at 3% as calculated by us…" Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure. For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would discounted by less, and further payments would be discounted by more. Based upon this formula, Balboa calculated that the amount due totaled $110,705.25. [*See id*., ¶7, Exh. A.]

In addition to the PV'D Rent, Defendants owed the monthly payments for July 29, 2025 and August 29, 2025, in the amount of $10,330.16, which had not been accelerated at the time of default as it was already due and payable.  [*See id.* ¶8, Exh. B.]  Defendants have since failed to make further payments.  [*See id.*]  Thus, $121,035.41 remains owed to Balboa.  [*See id.*]

Defendants cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If anything, Defendants' refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

## E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of*

MOTION FOR DEFAULT JUDGMENT
CASE NO. : 8:25-cv-02276-DFM

*Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F. Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. On November 11, 2025, Balboa served Defendants by personal service upon Held, as an individual and as the registered agent for Sosumi, at 4408 Corporate Sq., Naples, FL 34104. [*See* Dkts. 7-8.]

Further, Defendants were additionally served at the same address thereafter with the Default Entry Request. [*See* Dkt. 9.] Defendants have not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of

default), does not warrant a finding of excusable neglect. *See NewGen*, 804 F.3d at 616.

Here, Defendants have failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree. Instead, Defendants have blatantly ignored Balboa's Complaint and all other papers filed thereafter. Rather, Defendants' course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus would not constitute excusable neglect.

### F.   Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added). The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F. Supp. 2d at 1093 (defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendants have made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendants have deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendants' refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendants for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

### G.    Plaintiff Has Proven Its Damages.

Under the EFA, Sosumi was required to make fifty-nine (59) monthly payments of $5,165.08, beginning on August 29, 2022.  [Ngo Decl., ¶5, Exh. A.]  The last payment received by Balboa was credited toward the payment due for June 29, 2025.  [See id., Exh. B.]  Therefore, on July 29, 2025, Defendants breached the EFA, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [See id.]

At the time of Defendants' default there remained twenty-four (24) monthly payments for a total of $123,961.92, due to Balboa.  [See id., ¶6, Exh. B.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may "…(c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us…" Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure. For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would discounted by less, and further payments would be discounted by more. Based upon this formula, Balboa calculated that the amount due totaled $110,705.25. [See id., ¶7, Exh. A.]

In addition to the PV'D Rent, Defendants owed the monthly payments for July 29, 2025 and August 29, 2025, in the amount of $10,330.16, which had not been accelerated at the time of default as it was already due and payable.  [See id. ¶8, Exh. B.]  Defendants have since failed to make further payments.  [See id.] Thus, $121,035.41 remains owed to Balboa.  [See id.]

In addition, based on the amount due of $121.035.41, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Cal. Civ. Code § 3298(b), from July 29, 2025, the date of breach, to March 17, 2026, the date noticed for the hearing of this Default Motion, for a total interest

amount of **$7,693.12**, accruing at a rate of **$33.16 per day**, until the entry of judgment. [*See id.*, ¶9; *see also* Chen Decl., ¶¶5-6.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendants. [*See* Chen Decl., ¶7.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$6,020.71**. [*See id.*] Balboa has indeed incurred **$655.00**, in recoverable costs - $405.00 for filing of the Complaint, $125.00 for service upon Sosumi, and $125.00 for service upon Held. [*See id.*, Exh. D.]

Altogether, this totals out to **$135,404.24** (as of March 17, 2026), calculated as follows:

- Amount owed:   $ 121,035.41
- Prejudgment Interest:   $ 7,693.12
- Attorneys' Fees:   $ 6,020.71
- Recoverable Costs:   $ 655.00
- Total:   **$135,404.24**

## III.    CONCLUSION

Based on Balboa's Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendants, in the total amount of **$135,404.24** .

DATE: February 12, 2026     SALISIAN LLP

By: _____

Neal S. Salisian
Jared T. Densen
Patty W. Chen

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL
CORPORATION

15